UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ELIZABETH ANN LeBEAU, a/k/a ANN LeBEAU, and FRED QUIVER, a/k/a FRED BRINGS PLENTY,<br><br>Defendants. | CR. 16-50010-JLV<br><br><br>ORDER |

    In January 2016, Emily Bluebird was killed. It happened in a home in Pine Ridge, South Dakota. Only three people were in the room: Elizabeth Ann LeBeau, Fred Quiver and Emily Bluebird. Ms. LeBeau and Mr. Quiver were indicted for the killing. Ms. LeBeau signed a sworn statement setting out in plain terms that Mr. Quiver killed Ms. Bluebird. A sworn statement from Mr. Quiver makes it clear that Ms. LeBeau killed Ms. Bluebird. The prosecutor signed both Ms. LeBeau and Mr. Quiver's statements. Codefendants pointing fingers at each other is neither unusual nor a problem. But problems do arise when the government affirms two utterly irreconcilable factual statements identifying who caused Ms. Bluebird's death. It is the court's responsibility to unwind this issue and forge a workable path forward for this case.

### FACTUAL AND PROCEDURAL BACKGROUND

    On January 26, 2016, a grand jury indicted Ms. LeBeau and Mr. Quiver for the killing of Emily Bluebird. (Docket 1). Ms. LeBeau and Mr. Quiver were

charged as codefendants in the case.  Id.  The indictment alleged Ms. LeBeau committed first degree murder and Mr. Quiver was an accessory to first degree murder.  Id.

Nearly a year later, Ms. LeBeau entered a plea agreement with the government on February 17, 2017.  (Docket 59, later amended at Docket 76).  She pled guilty to second degree murder which carries a maximum custody sentence of life imprisonment.  (Docket 76 at p. 2).  The amended superseding information she pled to states she "did unlawfully kill Emily Bluebird, by holding Emily Bluebird's hands down while she was strangled . . . ."  (Docket 71 at p. 1).  It does not say who strangled Ms. Bluebird.

As part of her plea agreement, Ms. Lebeau signed a factual basis statement setting forth the facts underlying her offense.  (Docket 62).  Assistant United States Attorney Megan Poppen and Ms. LeBeau's attorney Dana Hanna also signed the statement, which begins, "[t]he undersigned parties stipulate that the following facts are true and establish a factual basis for the plea in the action pursuant to Federal Rules [sic] of Criminal Procedure 11(b)(3) . . . ."  Id. at p. 1, 5.  As to the moments surrounding the killing of Ms. Bluebird, the factual basis statement reads:

> LeBeau saw Quiver had a cord in his hand.  It looked like an electronics cord.  Quiver rapped [sic] the cord around Emily's neck and pulled her back.  Quiver went to his knees as he was choking her from behind.  Emily grabbed at the cord.  Quiver yelled at LeBeau, "Liz grab her fucking hands!"  LeBeau grabbed Emily's hands and held them down while Quiver choked Emily.  Quiver stopped choking Emily when she stopped moving.

Id. at p. 3.

Ms. LeBeau appeared before United States Magistrate Judge Daneta Wollmann for a change of plea hearing. (Docket 77). At the beginning of the hearing, Magistrate Judge Wollmann placed Ms. LeBeau under oath. (Docket 97 at pp. 2-3). Magistrate Judge Wollmann walked Ms. LeBeau through her factual basis statement. Id. at pp. 14-15. Ms. LeBeau affirmed she had "an opportunity to read through the factual basis statement and discuss it with [her] lawyer before [she] signed it[, and that] all of the facts contained in [it are] true and correct[.]" Id. at p. 14. Magistrate Judge Wollmann issued a report and recommendation for the court to accept Ms. LeBeau's plea of guilty to second degree murder as charged in the amended superseding information. (Docket 77). The court adopted the report and recommendation in full and scheduled Ms. LeBeau's sentencing. (Docket 79).

Four days after Ms. LeBeau's plea agreement was filed, Mr. Quiver entered a plea agreement with the government. (Docket 64, later amended at Docket 70). Mr. Quiver pled guilty to accessory to second degree murder, a crime with a maximum custody sentence of 15 years. (Docket 70 at p. 2). The superseding information Mr. Quiver pled guilty to states:

> Elizabeth Ann LeBeau . . . did unlawfully and with malice aforethought kill Emily Bluebird by asphyxia, secondary to strangulation with the use of a household electronics cord, and the defendant, Fred Quiver . . . did receive, relieve, comfort, and assist [Ms. LeBeau's] apprehension, trial, and punishment . . .

(Docket 72 at p. 1).

Like Ms. LeBeau, Mr. Quiver signed a statement delineating the facts supporting his guilty plea. (Docket 65). His attorney Ashley Parr and Assistant United States Attorney Megan Poppen signed the factual basis statement. Id.

3

at p. 4.  The document opens, "[t]he undersigned parties stipulate that the following facts are true and establish a factual basis for the plea in the action pursuant to Federal Rules [sic] of Criminal Procedure 11(b)(3) . . . ."  Id. at p. 1.  The moments around Ms. Bluebird's death in Mr. Quiver's statement are as follows:

> Quiver saw LeBeau grab a nearby cord and wrap it around Emily's neck multiple times.  LeBeau applied pressure by pulling the cord away from the front and side of Emily's neck.  LeBeau strangled Emily with the cord until she stopped breathing. . . .  Quiver attempted to intervene one time, but was unsuccessful.

Id. at p. 2.

Mr. Quiver appeared before Magistrate Judge Wollmann for his change of plea hearing.  (Docket 83).  Magistrate Judge Wollmann had Mr. Quiver placed under oath.  (Docket 100 at p. 2).  While under oath, Mr. Quiver stated he "read through" and "discuss[ed]" his factual basis statement with his attorney.  Id. at p. 14.  Magistrate Judge Wollmann asked Mr. Quiver twice whether "all of the facts contained in the factual basis statement [are] true and correct[,]" and he answered "Yeah" and "Yes, Your Honor."  Id.  Magistrate Judge Wollmann filed a report and recommendation for this court to accept Mr. Quiver's guilty plea to the accessory to second degree murder charge in the superseding information.  (Docket 83).  The court adopted the report and recommendation in full and scheduled a sentencing hearing.  (Docket 85).

Leading up to Ms. LeBeau's sentencing, her attorney Mr. Hanna noticed the fundamental discrepancies between Ms. LeBeau and Mr. Quiver's factual basis statements.  (Docket 88).  Mr. Hanna spotlighted the issue for the court

in a motion requesting the court order disclosure of Mr. Quiver's presentence investigation report ("PSR") to him.  Id.  The court granted Mr. Hanna's motion to receive a copy of Mr. Quiver's draft PSR.  (Docket 91).

The court scheduled a hearing for Ms. LeBeau, Mr. Quiver, their attorneys and the United States Attorney's Office to discuss how to move forward in light of the irreconcilable inconsistencies in the sworn factual basis statements.  (Docket 92).  At the hearing the parties presented argument. (Docket 93).  The defendants stated they do not seek to withdraw their guilty pleas.  (Docket 94 at pp. 29, 37).  At the conclusion of the hearing, all parties declined the opportunity to submit briefs stating their positions.  Id. p. 40.

## DISCUSSION

Rule 11 of the Federal Rules of Criminal Procedure governs a defendant's plea.  See generally Fed. R. Crim. P. 11.  Specifically, Rule 11(b)(3) provides, "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."  See United States v. Wroblewski, 816 F.3d 1021, 1024-25 (8th Cir. 2016) ("Before a district court enters judgment on a defendant's guilty plea, it must determine that there is an adequate factual basis for the plea.").

"A guilty plea is supported by an adequate factual basis when the record contains sufficient evidence at the time of the plea upon which a court may reasonably determine that the defendant likely committed the offense." United States v. Cheney, 571 F.3d 764, 769 (8th Cir. 2009) (internal quotation marks omitted).  "When determining whether a sufficient factual basis for a guilty plea

5

exists, [a court] may consider the plea agreement, the prosecutor's summary of the facts, the colloquy between the defendant and the district court during the change-of-plea hearing, as well as the facts set forth in the PSR." United States v. Qattoum, 826 F.3d 1062, 1065 (8th Cir. 2016).  In discussing a court's inquiry into a guilty plea's factual basis, the Advisory Committee Notes to Rule 11 provide, "[a]n inquiry might be made of the defendant, of the attorneys for the government and the defense, of the presentence report when one is available, or by whatever means is appropriate in a specific case."  See United States v. Wainuskis, 942 F. Supp. 1101, 1108 (S.D. Miss. 1996) (emphasis omitted) (quoting Rule 11 Advisory Committee Notes to the 1974 amendments).

  The government argues the court should view each defendant's factual basis statement in isolation.  (Docket 94 at pp. 11-12).  According to this argument, if the court does not compare the statements, then there is "an adequate factual basis . . . upon which a court may reasonably determine that the defendant likely committed the offense."  Cheney, 571 F.3d at 769 (internal quotation marks omitted).  Viewing each defendant's sworn statement in a vacuum likely would provide enough factual support for each guilty plea.  Ms. LeBeau's second degree murder charge stated she "h[eld] Emily Bluebird's hands down while she was strangled . . . ." (Docket 71 at p. 1), and she admitted that she "grabbed Emily's hands and held them down while Quiver choked Emily."  (Docket 62 at p. 3).  Mr. Quiver was charged with being an accessory to the murder and his statement describes the assistance he

6

provided Ms. LeBeau after Ms. Bluebird was killed.  (Dockets 65 at p. 2 & 70 at pp. 3-4).

While analyzing each factual basis statement in isolation may be convenient for the government, it is not workable for the court and the law cuts in the opposite direction.  The court has wide latitude in what it may consider when determining the factual support for a guilty plea.  See Qattoum, 826 F.3d at 1065 ("[A court] may consider the plea agreement, the prosecutor's summary of the facts, the colloquy between the defendant and the district court during the change-of-plea hearing, as well as the facts set forth in the PSR.").  The variety of sources listed in Qattoum highlights the importance of examining all relevant aspects of the case file.  As the Wainuskis court pointed out, a court may inquire "by whatever means is appropriate in a specific case."  Wainuskis, 942 F. Supp. at 1108 (quoting Rule 11 Advisory Committee Notes to the 1974 amendments).  In a murder case with codefendants, one facing a murder charge and the other an accessory, where each defendant's sworn statement claims the other was the killer, the court cannot view the statements in isolation.  The court should examine the entire case file, especially statements under oath going to the core facts of the case.  The government's position, for instance, would have the court ignore Ms. LeBeau's sworn statement that Mr. Quiver strangled Ms. Bluebird and move forward with sentencing Mr. Quiver as an accessory.  If the court did that, it would plainly abdicate its responsibility under Rule 11(b)(3) to "determine that there is a factual basis for the plea."

Because the court will weigh the defendants' sworn statements against each other in determining the factual basis for each defendant's guilty plea, the issue becomes whether the irreconcilable differences in the statements render the pleas' factual bases inadequate. As noted earlier, adequate factual support means "the record contains sufficient evidence at the time of the plea upon which a court may reasonably determine that the defendant likely committed the offense." Cheney, 571 F.3d at 769 (internal quotation marks omitted).

The government argues there is adequate factual support because the defendants' sworn statements are approximations of what occurred. (Docket 94 at pp. 12-13). This argument is unavailing. Approximations on other details of the night Ms. Bluebird was killed might not undermine the defendants' guilty pleas. For instance, rough estimations about how much alcohol either defendant drank or what time of day the events unfolded might not present issues. But each sworn statement does not approximate on the critical issue in this murder case of who killed Ms. Bluebird. (Dockets 62 at p. 3 & 65 at p. 2). Each defendant flatly states the other person killed Ms. Bluebird. As an officer of the court, the prosecutor signed each statement, certifying "that the following facts are true and establish a factual basis for the plea . . . ." (Dockets 62 at p. 1, 5 & 65 at p. 1, 4).

The government also contends the guilty pleas have sufficient factual support because the defendants' factual basis statements are merely what two highly intoxicated witnesses believe occurred. (Docket 94 at pp. 13-14). This position does not match the language in the statements. Neither Ms. LeBeau

8

nor Mr. Quiver's statement is framed as what they *believe* they saw. Ms. LeBeau's statement asserts in plain terms, "LeBeau saw Quiver had a cord in his hand. . . . Quiver rapped [sic] the cord around Emily's neck and pulled her back. . . . Quiver stopped choking Emily when she stopped moving." (Docket 62 at p. 3). The same certainty is present in Mr. Quiver's statement, which swears that "Quiver saw LeBeau grab a nearby cord and wrap it around Emily's neck multiple times. . . . LeBeau strangled Emily with the cord until she stopped breathing." (Docket 65 at p. 2). The defendants, their attorneys and the prosecutor "stipulate[d] that [those] facts [were] true and establish a factual basis for the plea . . . ." (Dockets 62 at p. 1, 5 & 65 at p. 1, 4). The government affirmed it is largely responsible for drafting the substance of the defendants' factual basis statements. (Docket 94 at pp. 21-22). The sworn statements do not support the government's position.

The government asserts there is no significant meaning to draw from the opening line of each factual basis statement, which reads:

> The undersigned parties stipulate that the following facts are true and establish a factual basis for the plea in the action pursuant to Federal Rules [sic] of Criminal Procedure 11(b)(3) . . . .

(Dockets 62 at p. 1 & 65 at p. 1). The government argues "[i]t's boilerplate surplusage. It's not part of Rule 11. There are many districts where it isn't done." (Docket 94 at pp. 37-38). This interpretation contradicts an ordinary understanding of this opening language. The language establishes the credibility for the defendant's factual basis statement. It assures the court accepting the plea that all parties in the case attest to the truth of the account

9

which follows. It even directs the court's attention to the applicable Rule 11 standard the factual basis statement must satisfy. The circumstances may be different had the prosecutor not signed the statements.

After comparing each defendant's sworn statement against the other's, the court finds neither defendant's guilty plea meets Rule 11(b)(3). If the court is to take the government at its word, the court cannot conclude adequate facts support Mr. Quiver's plea of guilty to accessory to second degree murder when the government separately affirms Mr. Quiver was the only person who strangled Ms. Bluebird to death. If Mr. Quiver strangled Ms. Bluebird, he is not an accessory—he is a murderer facing a potential life sentence rather than a 15-year maximum sentence. After the court considers the case file's relevant parts as directed in Qattoum, 826 F.3d at 1065, it cannot "reasonably determine that [Mr. Quiver] likely committed [accessory to second degree murder.]" Cheney, 571 F.3d at 769 (internal quotation marks omitted).

The same holds for Ms. LeBeau. She pled guilty to "holding Emily Bluebird's hands down while she was strangled . . . ." (Docket 71 at p. 1). Ms. LeBeau's sworn statement—signed by the government—states Mr. Quiver alone strangled Ms. Bluebird. (Docket 62 at p. 2). Unless the court disregards the government's separate affirmation that Ms. LeBeau was the only person who strangled Ms. Bluebird, the record prompts deep doubt as to who killed Ms. Bluebird, which is the central fact for Ms. LeBeau's plea. That doubt prevents the court from finding Ms. LeBeau likely committed second degree murder. See Cheney, 571 F.3d at 769.

10

Because the court finds neither defendant's guilty plea meets Rule 11(b)(3), the court vacates its orders accepting the guilty pleas. (Dockets 79 & 85).

## ORDER

Based on the above analysis, it is

ORDERED that the court's orders (Dockets 79 & 85) adopting the Magistrate Judge's reports and recommendations on the defendants' guilty pleas are vacated.

IT IS FURTHER ORDERED that a scheduling order will follow.

Dated July 21, 2017.

                BY THE COURT:

                /s/ *Jeffrey L. Viken*
                JEFFREY L. VIKEN
                CHIEF JUDGE